| |
|---|
| **Travelers Cas. & Sur. Co. v Vale Ltd.** |
| 2024 NY Slip Op 33157(U) |
| September 9, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 654028/2021 |
| Judge: Andrew Borrok |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 53

-----------------------------------------------------------------------------------X

TRAVELERS CASUALTY & SURETY COMPANY,

Plaintiff,

- v -

VALE LIMITED, AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., CGU INTERNATIONAL INSURANCE PLC, F/K/A COMMERCIAL UNION ASSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, FIREMANS FUND INSURANCE COMPANY, GENERAL REINSURANCE CORPORATION, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, INSURANCE COMPANY OF NORTH AMERICA, CERTAIN UNDERWRITERS AT LLOYDS, LONDON, ZURICH ASSURANCE LTD. F/K/A MIDLAND ASSURANCE LTD., SOMPO JAPAN NIPPONKOA INSURANCE, INC. F/K/A NIPPON F&M, ALLSTATE NORTHBROOK INDEMNITY COMPANY, F/K/A NORTHBROOK INDEMNITY COMPANY, ROYAL & SUN ALLIANCE INSURANCE COMPANY OF CANADA F/K/A ROYAL INSURANCE COMPANY OF CANADA, JOHN DOE INSURERS 1-10,

Defendant.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 654028/2021 |
| MOTION DATE | 05/27/2024, 06/18/2024, 06/18/2024, 06/18/2024 |
| MOTION SEQ. NO. | 023 024 025 026 |

**DECISION + ORDER ON MOTION**

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 023) 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 615, 616, 653

were read on this motion to/for                          RENEWAL                          .

The following e-filed documents, listed by NYSCEF document number (Motion 024) 617, 618, 619, 620, 621, 622, 623, 624, 625, 626, 704, 879, 880, 881, 882, 883, 884, 885, 886, 887, 888

were read on this motion to/for                          SUBPOENA                          .

The following e-filed documents, listed by NYSCEF document number (Motion 025) 627, 628, 629, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643, 654, 655, 656, 657, 658, 659, 660, 661

**654028/2021 TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL
Motion No. 023 024 025 026**

Page 1 of 24

were read on this motion to/for          EXTEND - TIME         .

The following e-filed documents, listed by NYSCEF document number (Motion 026) 644, 645, 646, 647, 648, 649, 650, 651, 652, 705, 889, 890, 891, 892, 893, 894, 895, 896

were read on this motion to/for          DISCOVERY         .

Upon the foregoing documents and for the reasons set forth below, (i) Vale Canada Limited (**Vale Canada**)'s motion (Mtn. Seq. No. 023) (a) to renew the Court's decision and order dated May 10, 2022 (the **Prior Decision**; NYSCEF Doc. Nos. 377-385), (b) to dismiss the complaint, and (c) for sanctions is DENIED, (ii) Vale Canada's motion (Mtn. Seq. No. 024) to issue a subpoena for the deposition of non-party Robert Hager is DENIED, (iii) Travelers Casualty & Surety Company (**Travelers**)'s motion (Mtn. Seq. No. 025) for an extension of time to file discovery motions concerning Vale Canada's production of Microsoft Teams data is GRANTED to the extent that the deadline to file any such motions shall be extended until one week from the date of this Decision and Order and (iv) Travelers, the North River Insurance Company, and United States Fire Insurance Company (collectively, the **Insurers**)'s motion (Mtn. Seq. No. 026) to compel Vale Canada to produce a Rule 11-f witness for a second deposition is GRANTED.

## THE RELEVANT FACTS AND CIRCUMSTANCES

Reference is made to (i) a certain Standstill and Confidentiality Agreement (the **Standstill Agreement;** NYSCEF Doc. No. 73), executed as of May 17, 2018 and May 22, 2018, by and among Vale Canada Limited, as successor to Inco Limited and its subsidiaries and their predecessors and Royal & Sun Alliance Insurance Company of Canada, as successor to Royal Insurance Company of Canada its subsidiaries, divisions, related affiliated and predecessor companies (the **Insurers**) and (ii) a certain Complaint (NYSCEF Doc. No. 2), dated June 25, 2021.

**654028/2021    TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**         **Page 2 of 24**
**Motion No. 023 024 025 026**

2 of 24

Pursuant to the terms of the Standstill Agreement, the parties acknowledged (i) that Vale Canada either had received or would receive certain claims or lawsuits with respect to certain environmental contamination for which it might be held responsible and that it expected to pay certain amounts in connection with the investigation, defense and settlement of those claims, (ii) that Vale Canada was of the view that damages or defense costs were covered under certain insurance policies (the **Policies**) issued by the Insurers, (iii) that the Insurers had not determined that those anticipated damages and/or defense costs were **"in any way"** covered by the Policies and that disputes between the parties may arise as to coverage and that they may need to go to Court to have the Court decide whether in fact coverage exists, (iv) that the Insurers did not concede that Canada law governed the relevant contracts and (v) that Vale Canada and the Insurers wanted to engage in good faith negotiations for a period of time to explore whether resolution of Vale Canada's potential claims for insurance was possible:

> WHEREAS, Vale Canada Limited, as successor to Inco Limited and its subsidiaries and their predecessors (collec1ively, "Policyholder"), has received or expects to receive one or more claims and/or lawsuits with respect to environmental contamination for which Policyholder is alleged to be responsible ("Claims"), and has paid or expects to pay sums in the investigation, defense and settlement of these Claims; and

> WHEREAS, Policyholder asserts that damages and/or defense costs it has incurred or will incur that are associated with the' Claims are covered under certain insurance policies issued to Policyholder and/or its predecessors in interest, including insurance policies issued by the undersigned Royal & Sun Alliance Insurance Company of Canada, as successor to loyal Insurance Company of Canada and its subsidiaries, divisions, related, affiliated and predecessor companies (collectively, "Insurers"); and

> WHEREAS, Insurers have not determined that any damages and/or any defense costs associated with the Claims are in any way covered under insurance policies Insurers or their predecessors in interest issued to Policyholder and/or its predecessors in interest ("Policies"), and disputes may arise between Policyholder and Insurers regarding insurance coverage for the Claims; and

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**
**Motion No.  023 024 025 026**

**Page 3 of 24**

3 of 24

WHEREAS Insurer does not concede that the sole, exclusive and proper law of the contract with respect to the Policies is other than the law of the Province of Ontario, Canada; and

WHEREAS, both Policyholder and Insurers wish to enter into good faith negotiations toward possible resolution of Policyholder's claims for insurance coverage for the Claims under the Policies, and intend that there should be a period of time allow such negotiations to proceed without prejudice to their respective legal rights, defenses, or obligations;

(NYSCEF Doc. No. 73, at 1). To be clear, at this time, Vale Canada had not filed a claim with Travelers. Instead, as indicated above, the parties agreed to a more informal process to explore the potential basis for Vale Canada's coverage assertions and the costs incurred and anticipated and how such costs were covered by the Policies.

As discussed above, although the parties agreed that they would work together in good faith during the period that the Standstill Agreement was in effect (*i.e.*, the Negotiation Period [hereinafter defined]), the parties acknowledged that their efforts may not be successful and that each party could terminate the Standstill Agreement on 21 days' notice and ultimately go to Court to see redress for their respective position:

> **11. Termination** - This Agreement may be terminated by either party by giving written notice to the other party. Termination shall become effective twenty-one (21) calendar days after notice of termination is received by the other party.

(*id.* at 4). The period during which these negotiations took place, the parties defined as the "Negotiation Period:"

> **1. Negotiation Period & Standstill** - During the period commencing at the date of execution of this Agreement and extending until the date when the termination of this Agreement by either party becomes effective in accordance with paragraph 11 below (the "Negotiation Period"), Policyholder and Insurer will attempt in good faith to resolve disagreements concerning alleged coverage for the Claims

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**          Page 4 of 24
**Motion No.  023 024 025 026**

4 of 24

only by negotiation, not by litigation. During the Negotiation Period, neither party will commence litigation against the other concerning the matters being negotiated. Commencement of such litigation by either party against the other during the Negotiation Period will constitute an immediate breach of this Agreement. Policyholder and Insurer agree that a court is authorized to dismiss an action between them on grounds that it was riled in breach of this Agreement.

(*id.* at 1-2).

In order to facilitate their potential settlement conversations during the Negotiation Period, and recognizing that certain documents "have been **prepared…**specifically for use in the compromise negotiations," the parties agreed that any such documents would be designated as Confidential Settlement Documents and that such Confidential Settlement Documents could not be used for other purposes. The parties also agreed that **other documents** exchanged "in the context of the Agreement but [that] have not been prepared by or at the request of a party to the Agreement are not 'Confidential Settlement Documents.'" As to those **other documents** – *i.e.*, documents not designated as Confidential Settlement Documents – the parties agreed that those **other documents** could be used in subsequent litigation in the event that the parties were unsuccessful in their negotiations:

> **6. Designation and Use of Confidential Settlement Documents** - Policyholder and Insurer may designate as "Confidential Settlement Documents" those documents, and only those documents, that have been prepared by or at the request of Policyholder or Insurer, as appropriate, specifically for use in the compromise negotiations contemplated by this Agreement. Documents that are exchanged in the context of this Agreement but have not been prepared by or at the request of a party hereto are not "Confidential Settlement Documents." Any Confidential Settlement Documents presented by either party during the course of compromise negotiations are to be used by the receiving party solely for the purpose of the compromise negotiations and may not be used for any other purpose. Except in litigation, arbitration, or other contested proceeding between the parties concerning interpretation or enforcement of this Agreement or of any

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**                **Page 5 of 24**
**Motion No.  023 024 025 026**

5 of 24

subsequent settlement agreement that may be entered into by the parties, Policyholder and Insurer each agrees not to seek discovery of any information concerning the existence or creation of Confidential Settlement Documents presented by the other, and (if applicable) not to take a deposition regarding the compromise negotiations of any expert specifically retained by the other for the compromise negotiations. However, Policyholder and Insurer each reserves its respective rights, if any, to seek discovery of otherwise discoverable information, and to depose any expert specifically retained by the other for compromise negotiations if such expert is designated to testify at trial or has knowledge of facts learned other than in the course of such special retainer (in which case such discovery may be directed only to information or documents not protected hereunder). Each party reserves all objections to any discovery sought from such expert by the other. Except as provided in paragraph 10 below, Policyholder and Insurer agree not to disclose to any party (including other insurers) or person not participating in the compromise negotiations (excluding employees, counsel, or agents of Insurer or Policyholder) the existence or substance of any documents designated as Confidential Settlement Documents. Except as provided in paragraph 10 herein, Policyholder and Insurer further agree not to disclose to any person not present at the compromise negotiations (excluding employees, counsel, or agents of Insurer or Policyholder) the identity of any person or organization (including experts specially retained tor the compromise negotiations) involved in drafting documents designated as Confidential Settlement Documents. Upon conclusion of a written settlement agreement or termination of this Agreement in accordance with paragraph 11 below, each party agrees to continue to protect and preserve any Confidential Settlement Documents it has received, and all copies of such documents, subject to the terms of this Agreement.

(*id.* at 2-3). To the extent that Section 6 of the Standstill Agreement was not clear that the limitation imposed was <u>limited solely to prohibiting the use of Confidential Settlement Documents in subsequent litigation</u>, the parties made that clear in Section 7 of the Standstill Agreement, where they not only indicated that documents that were not Confidential Settlement Documents could be used in subsequent litigation, but also that <u>even Confidential Settlement Documents might be available for use in subsequent litigation if in fact such Confidential Settlement Documents were used by the party creating such Confidential Settlement Documents for a purpose other than compromise negotiations</u>:

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**                    **Page 6 of 24**
**Motion No.  023 024 025 026**

[* 6]                                                                6 of 24

**7. Use of Other Documents** - Notwithstanding the foregoing, both parties may discover and use in litigation any document that was not created for purposes of compromise negotiations and that is otherwise discoverable under applicable law or rules of procedure. In addition, nothing in this Agreement shall be construed in any way to control the use, dissemination, publication, or disposition by a party of documents or information received at any time by that party outside the course of these compromise negotiations.

**8. Loss of Privilege on Confidential Settlement Documents** - Nothing in this Agreement shall prevent any party from using or disclosing its own documents or information outside of the compromise negotiations, provided such documents or information do not include information obtained solely from the other party in the course of compromise negotiations. If, however, a document designated by a party as a Confidential Settlement Document is used by the same party for a purpose other than compromise negotiations, the restrictions set forth in this Agreement shall no longer apply to that document.

(*id.* at 3).

Ultimately, the parties were not successful in their negotiations, and Travelers exercised its right to terminate the Standstill Agreement (*tr.* 9.5.2024) and come to Court and seek redress of its position – *i.e.*, that when Travelers inquired as to the basis for coverage during the Negotiation Period, Vale Canada failed to identify a basis upon which coverage exists. To wit, after terminating the Standstill Agreement, and as the Standstill Agreement contemplates, Travelers brought this lawsuit seeking a declaration that no coverage existed:

1. This is an action for declaratory judgment. At various times during the 1970s and 1980s, Travelers issued a number of insurance policies to the International Nickel Company, Inc. ("Inco") and companies affiliated with Inco (the "Policies"). Defendant Vale Canada Limited ("Vale"), is the purported successor in interest to Inco's rights under the Policies. Vale has asserted that it is entitled to coverage from Travelers for costs that it has incurred and will allegedly incur in the future with respect to its obligations to investigate and remediate environmental pollution or contamination at numerous current and former Inco sites throughout the world (the "Claims"). Upon information and belief, Vale also seeks coverage for such costs from the other insurer defendants under policies that those insurer defendants purportedly issued to Vale's predecessors. In this action, Travelers now seeks a declaratory judgment that the Policies do not provide

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**          **Page 7 of 24**
**Motion No.  023 024 025 026**

7 of 24

coverage for the Claims, because among other reasons: 1) the Claims do not arise from an "occurrence" as required by the Policies; 2) the Claims are not claims for "damages" because of "property damage" as required by the terms of the Policies; 3) Vale failed to provide Travelers with notice of any such "occurrences" as soon as practicable as required by the Policies; 4) Vale failed to immediately provide Travelers with notice of any claims and/or lawsuits asserted against it; 5) Vale improperly seeks to recover for damages that took place outside of the effective dates of the Policies; 6) Vale improperly seeks reimbursement for payments that Vale has made without Travelers' consent; 7) Vale improperly seeks reimbursement for payments arising from obligations that Vale has assumed without Travelers' consent; 8) Vale's claims are barred by the Policies' "pollution exclusions"; 9) Vale improperly seeks coverage for costs excluded by the Policies' "owned property exclusions"; 10) the Policies are not "triggered" by the Claims as any recoverable damages allocated to the years of Travelers' coverage are insufficient to exhaust the coverage underlying the Policies; and 11) the Claim are excluded or otherwise fall outside the scope of coverage provided by the Policies due to other provisions of the Policies.

(NYSCEF Doc. No. 2 ¶ 1). At the time, Travelers had not issued a formal denial letter to Vale Canada. In the Complaint, however, Travelers indicated that it issued the Policies which are comprised of certain primary, umbrella, and excess insurance policies ensuring certain risks, that Vale Canada had taken the position that it was the successor-in-interest under the Policies, that Vale Canada had indicated that it had coverage under the Policies, and that Travelers' position was that Vale Canada did not have coverage under the Policies for the reasons set forth in the Complaint (*see, e.g., id.* ¶¶ 61-63). As such, Travelers indicated that a judicial controversy exists such that they are entitled to a declaratory judgment from the Court as to whether coverage exists under the Policies.

The defendants in this case then moved to dismiss (Mot. Seq. No. 003) arguing that the case should be dismissed on three grounds: (i) *forum non conveniens* pursuant to CPLR 327, (ii) the existence of "another action pending between the same parties for the same cause of action" pursuant to CPLR 3211(a)(4) based on a later filed action in Canada, and (iii) failure to state a

**654028/2021  TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**  **Page 8 of 24**
**Motion No.  023 024 025 026**

8 of 24

claim pursuant to CPLR 3211(a)(7) (NYSCEF Doc. No. 603, at 10). For the reasons set forth in the Prior Decision, the Court denied the motions. At that time, although the defendants adduced the Standstill Agreement in support of their motion to dismiss, which makes clear that Travelers "ha[d] not determined that any damages and/or any defense costs associated with the Claims are in any way covered under insurance policies" (NYSCEF Doc. No. 73; emphasis added] and Travelers had not issued an actual denial letter, Vale Canada did not argue that no justiciable controversy exists because a final coverage determination had not yet been made or because Travelers was looking to the Court to decide whether coverage exists under the Policies.

Subsequently, discovery ensued. On April 4, 2024, Vale Canada deposed Robert Harris, Travelers' corporate designee (NYSCEF Doc. No. 591). Consistent with the Standstill Agreement, Mr. Harris testified that Travelers had not been presented by Vale Canada with a basis for Travelers extending coverage as to Vale Canada's incurred and anticipated damages and costs, and that at the time that Travelers filed the Complaint, a final determination as to whether coverage exists had not been made and ultimately Travelers was looking to the Court to decide whether coverage exists:

> Q: So, if I'm understanding you correctly, it was not Travelers' position that the claims do not arise from an occurrence as required by the policies; Travelers had no view on that at the time it filed this complaint?
>
> A: Well, we definitely had a view, and, you know, without going into the details of it, I mean, we all know that there had been…that, you know, that Vale had approached us, not tendering claims for normal handling but attorney to attorney, counsel to counsel, had asked for a confidential tolling period and a confidential information exchange period, and the hope was to—Vale was seeking coverage for a number of matters. And as we exchanged information and negotiated, *we were unable to find a basis to provide coverage,* and so as the tolling agreement provided for termination. So then, since we knew that Vale was asserting that it wanted coverage for these environmental claims, *we asked the court to determine the issues*, but—and I know that because of the confidentiality agreement we're

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**          Page 9 of 24
**Motion No.  023 024 025 026**

9 of 24

not discussing any of the substance that took place during that three years, but *we had reasons to go to the court and say we are not seeing a basis for an occurrence, will you make a declaration as to the rights of the parties under the policies. So we're asking the court to make that determination. But Travelers has not to date seen basis to determine that there is an occurrence giving rise to these claims*. . . .

Q: Does Travelers deny that there's coverage for Vale Canada's claims that are the subject of Travelers complaint?

A: We do not—I'm trying to think how I can do this again without getting into the realm of what I know from discussions with counsel, but Travelers—one way of thinking of this is if you look at the—if you think about the insuring agreement of one of the policies at issue. In the first instance it's the policyholder's burden to prove or to satisfy the insuring agreement and to demonstrate that they have a legal obligation to pay damages because of—we'll just say property damage. I'm not aware of any bodily injury claims in this matter. So legal obligation to pay damages because of third-party property damage that took place during the policy period as caused by an occurrence. That's all, you know, the basic insuring agreement and that's the policyholder's burden to satisfy. And then if they were to satisfy that, then the burden shifts to us to demonstrate that exclusions, limited or remove coverage, or that, you know, conditions haven't been complied with or something like that. We are talking generalities. And *we have not been able to conclude, from information available to date, that there are covered occurrences, and when we look ahead, when we look down the road to our pollution exclusions in the policies, our pollution exclusions, in the first instance, are absolute exclusions, you just take away all pollution coverage, but there's a exception clause that the policyholder [audio drop] satisfy. And so far we haven't seen any information that would satisfy the exception clause for pollution exclusions*. So, now we're still in discovery. Discovery is not over. We haven't had the opportunity to obtain all the facts that will be obtained in litigation, analyze and marsh them together, you know, to formulate, you know, proposed positions to put before the court. But to date, *we haven't seen any basis to extend coverage. We haven't seen any satisfaction of the insuring agreement nor of the exception clause to the pollution exclusion*.

(*see, e.g., id.* at 74-75, 135-137).

After Mr. Harris's deposition, Vale Canada then filed a motion to renew the Court's Prior Decision arguing that, based on Mr. Harris's testimony (and notwithstanding the fact that they have filed a lawsuit in Canada arguing breach of contract as against Travelers), Vale Canada was

**654028/2021 TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL** Page 10 of 24
**Motion No. 023 024 025 026**

10 of 24

[* 10]

entitled to renewal because there was no justiciable controversy for the Court to adjudicate. Additionally, and as discussed below, Vale Canada argues that the declaratory judgment claim cannot proceed because Mr. Harris is relying on information obtained during the Negotiation Period.

As relevant to Vale Canada's motion seeking to issue a subpoena for Mr. Hager, in March 2024, Vale Canada issued a foreign subpoena to the Connecticut Superior Court seeking to depose Mr. Hager, the then 91-year-old ex-employee of Travelers, for "information concerning underwriting documents" that are allegedly relevant to the claims at issue in this case (NYSCEF Doc. No. 625). Mr. Hager has been retired for some 30 years, and the clear and unambiguous Policies that he allegedly worked on were written approximately 50 years ago (NYSCEF Doc. No. 879, at 2-3). Travelers filed a motion to quash the subpoena on the grounds that Mr. Hager had no material testimony to offer (NYSCEF Doc. No. 883). Specifically, Mr. Hager swore in his affidavit that he had no recollection of the Policies at issue or their underwriting:

> 11. I have no recollection of International Nickel Company, Inc., International Nickel Company of Canada, Limited, or Inco (collectively referred to as "Inco").

> 12. l have no recollection of Vale Canada Limited ("Vale").

> 13. I have examined the March 5,1974, February 18,1974, and December 23,1976 documents that are referenced in the Subpoena, and they did not refresh my recollection as to Inco, its policies, or any underwriting information related to its policies.

> 14. Since my retirement from Aetna approximately thirty years ago, I have given little, if any, thought to the underwriting of general liability policies and as I sit here today, I do not believe that I have any relevant or material information to provide regarding the underwriting of insurance policies dating back between forty and fifty years ago.'

> 15. I do not have any relevant or material information regarding any underwriting decisions made regarding any policies issued to Inco between 1973 and 1985.

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**          **Page 11 of 24**
**Motion No.  023 024 025 026**

11 of 24

16. I do not have any relevant or material information regarding policies issued to Inco between 1973 and 1985.

17. I do not have any direct knowledge regarding the issues, claims, or defenses presented by either of the parties in the underlying action.

18. At the age of 91 and retired for almost thirty years, I do not feel that I can testify competently regarding the March 5, 1974, February 18, 1974, and December 23, 1976 documents referenced in the Subpoena or my tenure at Aetna between 1973 and 1985.

19. I don't believe that I have the strength or stamina to sit for a deposition

(NYSCEF Doc. No. 881 ¶¶ 11-19).

The Connecticut Superior Court, in hearing oral argument on Vale Canada's foreign subpoena, indicated that it was not inclined to order it:

> I've done my own declaratory judgement cases involving interpretations of insurance policies. . . . And I'm just at a loss as to why you would need a man who hasn't worked for Travelers in 32 years, doesn't remember anything, and where the key issue in your case is likely going to be an interpretation of a policy. . . . Now what you're saying is you want to put 450 documents in front of a 92-year-old man and ask him if he can remember these from more than 30 years ago? . . . Why do you think he'll be able to remember when he himself says he doesn't remember? . . . It doesn't just say I looked at three documents and I don't remember. He says I retired over 30 years. I have no recollection of [Inco] . . . I examined the documents -- I mean, it's not just limited to three documents. He doesn't remember anything from this account.

(NYSCEF Doc. No. 883, at 12, 14-15). In fact, the Connecticut Superior Court presented Vale Canada with two options: (i) Vale Canada "could create a 'very limited' list of documents and questions on which it would propose to depose Mr. Hager and allow Mr. Hager's counsel to review the documents and questions with Mr. Hager to determine whether they refreshed his recollection" or (ii) Vale Canada "could request that this Court determine whether the testimony

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**          **Page 12 of 24**
**Motion No.  023 024 025 026**

12 of 24

that Vale seeks to elicit from Mr. Hager is material to this Action," and the Connecticut Superior Court "would then presumably consider this Court's view in ruling on Mr. Hager's motion to quash" (NYSCEF Doc. No. 879, at 4). In response, Vale Canada turned to this Court, seeking an order issuing a subpoena for the deposition of Mr. Hager. In opposition to the motion (and as discussed below), Travelers indicates that (i) the Court does not have the authority to issue a subpoena for Mr. Hager, (ii) Mr. Hager has already indicated that he has no recollection as to Vale Canada or the Policies and (iii) Mr. Hager's testimony is immaterial in any event because the Policies are unambiguous (*tr.* 12.20.2022).

As relevant to Travelers' request for an extension of time to file an appropriate motion as to Vale Canada's belated production, Travelers indicates that on February 21, 2024, Travelers deposed Frank Petrolo, an employee of Vale Canada's insurance department (NYSCEF Doc. No. 631). Mr. Petrolo's testimony revealed that Vale Canada frequently conducted regular business communications through Microsoft Teams, including internal communications regarding the insurance coverage claims at issue in this litigation:

> Q: What types of communications would you have with any of your colleagues through Teams? And I mean written communications, not oral.
>
> A: A variety of conversations with coworkers in Teams.
>
> Q: And were those business-related conversations that you would have through Teams?
>
> A: I would say mostly yes.
>
> Q: Do you know whether you communicated with anyone at Vale using the Teams platform about any of the insurance coverage claims that are the subject of this litigation?
>
> A: Yes, probably, but I don't recall those messages at all.

**654028/2021  TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**     **Page 13 of 24**
**Motion No.  023 024 025 026**

[* 13]

13 of 24

Q: Do you think you might have talked with any of your colleagues through the Teams platform about the placement of insurance on behalf of Vale?

A: Placement of insurance in general on behalf of Vale?

Q: In general, yup.

A: Yes, yes.

(*id.* at 177-178). When Travelers requested the Teams information, the parties had several meet-and-confer meetings where ultimately Vale Canada agreed to review and produce its Teams data in May 2024 subject to items identified on its privilege log (NYSCEF Doc. No. 628, at 4).

This production did not, however, occur in May 2024, as the parties agreed, where Travelers could have reviewed the production and brought any necessary motion based on its review of the production. Instead, Travelers indicates that Vale Canada did not produce the categorical privilege log until June 14, 2024 – *i.e.*, <u>a mere four days before the June 18 deadline to file an order to show cause in connection with fact discovery</u> (*id.* at 5). In addition, Travelers indicates that Vale Canada only provided a categorical log, which provided "only generic descriptions of the basis for privilege" (*id.* at 3). Ultimately, Travelers indicates that on June 18, 2024, and four days following the discovery deadline, Vale Canada agreed to provide a document-by-document privilege log (*id.* at 4). As a result, and because it could not have brought one prior to June 18, 2024, Travelers sought an extension to file a discovery motion concerning Vale Canada's production of Teams data (*id.* at 3).

Finally, as relevant to Travelers' motion seeking an additional 11-F corporate witness deposition, on March 26, 2024, the Insurers deposed Vale Canada's Rule 11-f corporate witness, Lisa

**654028/2021  TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**
**Motion No.  023 024 025 026**

**Page 14 of 24**

14 of 24

Lanteigne. Ms. Lanteigne testified that Vale Canada is seeking to recover all of the costs allegedly incurred by Vale Canada. Significantly, as it relates to the instant motion, she was unable to testify as to any past costs incurred or paid by Vale Canada for which it seeks reimbursement from the Insurers or the basis upon which Vale Canada asserts that coverage exists as to any such costs:

> Q: Are there any costs that Vale has incurred to date that it believes the insurance carriers that are parties to the New York litigation should have paid on behalf of Vale?
>
> A: I don't know.
>
> Q: Besides the question of how much was incurred as a past cost, do you know the answer as to whether or not Vale incurred any costs in the past that it believes were the obligation of the insurance carriers to reimburse in connection with the Thompson Mine complex?
>
> A: I don't know
>
> Q: Is there anyone at Vale that would know the answer to that question?
>
> A: I don't know

(*e.g.*, NYSCEF Doc. No. 650, at 170 ¶ 16-171 ¶ 16). Subsequently, the Insurers asked Vale Canada to produce Ms. Lanteigne for a second deposition in order to address specific questions regarding costs related to the four test sites that Ms. Lanteigne had been unable to answer in her first deposition (NYSCEF Doc. No. 645, at 3-4). When Vale Canada refused, and at the Court's direction, the Insurers filed the instant motion (Mot. Seq. No. 026) seeking to compel Vale Canada to produce "an 11-f witness for another deposition session . . . to answer cost-related questions that Ms. Lanteigne could not (or would not) answer during her March 26, 2024 deposition" (NYSCEF Doc. No. 645, at 4). According to Vale Canada, Ms. Lanteigne simply does not know any answers, Travelers should wait until Vale Canada's expert completes its

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**   **Page 15 of 24**
**Motion No.  023 024 025 026**

15 of 24

forensic accounting analysis, and Vale Canada should not have to produce a fact witness who could testify as to these subjects (*tr*. 9.5.2024).

## DISCUSSION

### 1. Vale Canada's Motion to Renew/Dismiss/Sanction (Mtn. Seq. No. 023) is denied

Pursuant to CPLR § 2221, a motion for leave to renew shall be based on new facts not offered on the prior motion or a change in the law, in either case, that would change the prior determination, and a reasonable justification for the failure to present such facts on the prior motion (CPLR § 2221; *Foley v Roche*, 68 AD2d 558, 568 [1st Dept 1979]). Although motions to renew are addressed to the court's sound discretion (*William P. Pahl Equip. Corp. v Kassis*, 182 AD2d 22, 27 [1st Dept 1992]), such motions should be "granted sparingly" and are not a second chance for parties who have not exercised due diligence submitting facts in the prior motion (*Beiny v Wynyard (In re Beiny)*, 132 AD2d 190, 209-210 [1st Dept 1987]). Failure to include facts known to the movant at the time of the prior motion but not included in the movant's prior submissions cannot serve as the basis for a renewal motion.

At bottom, Vale Canada argues that it is entitled to renewal because it claims that it learned during discovery that certain of the allegations in the complaint are "not true" and that, as such, it is entitled to dismissal because the Court lacks subject matter jurisdiction. More specifically, Vale Canada argues that Traveler's 11-F witness testified that Travelers is relying on certain information that was obtained during the Negotiation Period as to its position in this lawsuit, that no formal denial was ever issued by Travelers and a final coverage determination has not been made by Travelers, and that Travelers is looking to the Court to determine whether coverage

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**
**Motion No.  023 024 025 026**
     **Page 16 of 24**

16 of 24

exists. This presents at least two problems according to Vale Canada. First, they argue that Travelers cannot rely on information obtained during the Negotiation Period. Second, if a final coverage determination has not been made and a denial not sent, the Court lacks subject matter jurisdiction. Renewal and dismissal are appropriate, they argue, because these "new facts" they did not know and/or understand and could not have until Traveler's 11-F witness was deposed. Additionally, they argue that they are entitled to sanctions because the Complaint has certain statements which they say are not true – *i.e.*, that Travelers denies that coverage exists. The argument fails.

Initially the Court notes, that it is simply not true that the parties agreed that ***no information*** obtained during the Negotiation Period could form a basis for subsequent lawsuit. As discussed above, the parties understood that there would be some confidential and some non-confidential information exchanged and ***only Confidential Settlement Documents*** used in the negotiations could not be used in subsequent litigation. Nothing in his testimony establishes that he is relying on Confidential Settlement Documents for Travelers' position in this lawsuit.

Second, Mr. Harris's testimony does not form a predicate for renewal and dismissal based on lack of subject matter jurisdiction. As discussed above, the Standstill Agreement reflects the parties' informal process to try to explore and resolve what potential claims Vale Canada would face (or was facing) for which it would make a demand for insurance coverage under the Policies and the basis for any such demand, and Travelers' position that it had not been presented with a basis upon which coverage exists under the Policies (NYSCEF Doc. No. 73). The parties understood that amicable resolution may however not be possible, and that the instant litigation

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**                    **Page 17 of 24**
**Motion No.  023 024 025 026**

17 of 24

might follow where it might fall to the Court to ultimately determine whether coverage exists under the Policies. In this regard, and as discussed above, the parties bifurcated what information could be used in this litigation and that which could not. Thus, it simply is not the case that litigation was not contemplated previously, or that Vale Canada did not understand that if the parties were unable to resolve their dispute that Travelers would look to the Court to make an ultimate coverage determination or that Travelers had not been presented with a basis upon which coverage exists such that the statements in the Complaint are not true.

Equally importantly, this simply is not "new information" learned during Travelers' 11-F deposition warranting renewal. Mr. Harris's testimony does not utterly refute Travelers' position (quite the contrary) set forth in the Standstill Agreement or the Complaint. The Complaint says that coverage does not exist and as indicated above, Mr. Harris' testimony corroborates exactly that – *i.e.*, that Travelers is of the view, and as set forth in the Complaint, that Vale Canada has not provided Travelers with an "occurrence" triggering coverage or other basis for coverage, and that ultimately Travelers is looking to the Court for a declaration that coverage does not exist based on what Travelers deems is the basis for denial of coverage. It is hyperbole to characterize this testimony otherwise to argue that no justiciable controversy exists between the parties. Stated differently, even if Mr. Harris' testimony can be construed as presenting "new facts" warranting renewal, dismissal remains inappropriate, and it would not have changed the Prior Decision.

In addition, this is a new argument not new facts – *i.e.*, that the Court lacks subject matter jurisdiction. This, although not waivable, Vale Canada did not previously argue. As such, the

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**                    **Page 18 of 24**
**Motion No.  023 024 025 026**

18 of 24

Prior Decision would remain unchanged. Putting that aside, even if this were considered a new fact and not a new legal theory, it is a false spin to indicate that a justiciable controversy does not exist between the parties as to whether coverage exists under the Policies given the lawsuit filed here and in Canada warranting dismissal. It is simply irrelevant that a formal denial was not sent before Travelers brought this lawsuit (*see Employers Ins. of Wausau v Fox Entertainment Group, Inc.* 522 F3d 271 [2008]; *Atlantic Mut. Ins. Co. v Balfour Maclaine Intern. Ltd.,* 775 FSupp. 101 [1991]; *Norfolk & Dedham Mutual Fire Ins. Co. v Petrizzi*, 503 NYS2d 51, 53 [1st Dept. 1986]).

At the motion to dismiss stage, the Complaint is to be afforded a liberal construction, and the Court is to accept the facts as alleged as true, accord the non-moving party the benefit of every favorable inference, and determine only whether the facts alleged fit any cognizable legal theory (*Leon v. Martinez*, 84 NY2d 83, 87-88 [1994]). Even if Mr. Harris's testimony were to be considered contrary to the statements in the Complaint (and this is a stretch because the testimony does the opposite – it corroborates that Travelers does not believe that coverage exists because it had not been presented with an "occurrence" or other basis triggering coverage under the Policies and that Travelers is seeking a determination from the Court that it did not have to provide coverage for the reasons set forth in the Complaint), Mr. Harris' testimony does not serve to suggest that CPLR 3211(a)(2) dismissal is appropriate; Awitness' subsequent testimony, even if somehow inconsistent, does not warrant dismissal pursuant to CPLR 3211(e) under the circumstances. Thus, the motion is denied.

Inasmuch as the motion is denied, Vale Canada's motion for fees and sanctions is also denied. Travelers' position is not frivolous, and a justiciable controversy exists between the parties.

654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL
Motion No. 023 024 025 026

Page 19 of 24

19 of 24

Finally, and for the avoidance of doubt, Travelers' cross-motion for sanctions and an award of costs and attorney's fees (NYSCEF Doc. No. 603) is also denied.

## 2. Vale Canada's Motion to Issue Subpoena (Mtn. Seq. No. 024) is denied

CPLR § 3101 "requires full disclosure of all matter material and necessary in the prosecution or defense of an action." Vale Canada seeks an order issuing a subpoena for the deposition of non-party Mr. Hager, who Vale Canada alleges is "the only living individual who was directly involved in the underwriting and placement" of the insurance policies at issue in this litigation (NYSCEF Doc. No. 618, at 1). The argument fails.

Travelers' position in this lawsuit is that the potential claims do not arise from an "occurrence" that is covered by the Policies, are not claims for "property damage" as required under the Policies, and are otherwise barred by the "pollution exclusion" under the Policies (NYSCEF Doc. No. 2, at 2). The Policy language is clear and unambiguous:

> **"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured** . . .

> **"property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period

**654028/2021  TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**  **Page 20 of 24**
**Motion No.  023 024 025 026**

20 of 24

[* 20]

(*see, e.g.*, NYSCEF Doc. No. 33). Thus, extrinsic evidence of Mr. Hager's proposed testimony, who retired over 30 years ago <u>and has no present memory of these Policies written over 50 years ago</u>, is simply immaterial and irrelevant. As such, the motion is denied.

### 3. Travelers' Motion for Extension of Time (Mtn. Seq. No. 025) is granted

A motion for extension of time may only be granted on "good cause" shown (CPLR § 2004). Travelers seeks an extension for filing any discovery motions concerning Vale Canada's production of Microsoft Teams data, arguing that it required additional time to review the Teams data and privilege log so that it can evaluate whether to bring a discovery motion related to the production. As discussed above, Travelers was not in a position to know whether it would be necessary to bring a motion seeking to compel discovery until it received Vale Canada's production and privilege log, which was delayed beyond the time the parties agreed and initially in a form which did not convey sufficient information for Travelers to make a determination as to whether it would be necessary to bring a motion seeking to compel additional disclosure. Thus, Travelers' motion for an extension of time is granted to the extent that the deadline to file any discovery motions related to the Teams data shall be extended for one week from the date of this Decision and Order.

### 4. The Insurers' Motion to Compel (Mtn. Seq. No. 026) is granted

CPLR 3101(a) mandates that "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof, by . . . a party, or the officer, director, member, agent or employee of a party." As rule, "a corporation has the right in the first instance to determine which of its representatives will appear for an examination before

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**                 **Page 21 of 24**
**Motion No.  023 024 025 026**

21 of 24

trial" (*Faber v New York City Transit Auth.*, 177 AD2d 321, 322 [1st Dept 1991]). If after the deposition of the person produced it appears that additional depositions of specific witnesses is necessary, a plaintiff may make an application to the court to compel the production of such additional witnesses (*id.* at 322-23). Good cause must exist to permit the parties to take the additional depositions (22 NYCRR §202.70 Rule 11-d[f]). To establish entitlement to the production of additional witnesses for deposition, a plaintiff must show that "the representative already deposed had insufficient knowledge or was otherwise inadequate" (*Douglas v New York City Transit Auth.*, 48 AD3d 615, 616 [2d Dept 2008]).

The Insurers argue that it is entitled to take an additional 11-F deposition because Ms. Lanteigne did not have the requisite knowledge to testify as to the costs that Vale Canada claims are covered by the Insurers' policies as to the four sites that Travelers noticed or the basis for the assertion of coverage as to costs related to those four sites (NYSCEF Doc. No. 645, at 3). At issue in this case is a declaration from the Court as to whether coverage exists as to certain costs to which Vale Canada seeks coverage and whether Travelers is entitled to a declaration that no such coverage exists as to these costs under the Policies. Thus, the cost information about the four sites noticed is unquestionably material and necessary to the Insurers' prosecution of and/or defense against all parties in this case (*Kapon v Koch*, 23 NY3d 32, 34 [2014]; *Liberty Petroleum Realty, LLC v Gulf Oil, L.P.*, 164 AD3d 401, 403 [1st Dept 2018]).

It is wholly irrelevant that Ms. Lanteigne herself does not have anything further to add to her testimony because the costs are being reviewed by a forensic accounting expert or that the expert will testify during expert discovery and potentially at trial based on certain assumptions that the

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**   **Page 22 of 24**
**Motion No.  023 024 025 026**

22 of 24

expert will make. It also does not matter that the expert has not completed its analysis or even if costs are still being incurred for which Vale Canada might seek coverage. Although Vale Canada need not necessarily produce Ms. Lanteigne for a second deposition, Vale Canada must produce a fact witness with knowledge based on Vale Canada's business records (or personal knowledge) who can testify based on what costs have been incurred, what they anticipate shall be incurred and the basis for coverage as to those costs, or they cannot produce a fact witness as to this information at trial or in support or opposition to any motion for summary judgment. They simply cannot have it both ways. Thus, the Insurers' motion to compel Vale Canada to produce a Rule 11-f witness for an additional deposition is granted, and they shall produce an 11-F witness to testify as to the incurred costs to date, what they anticipate costs to be, and the basis for coverage as to those costs within 30 days for a deposition, or the Insurers may move for all appropriate relief by order to show cause.

The Court has considered Vale Canada's remaining arguments and finds them unavailing.

Accordingly, it is hereby

ORDERED that Vale Canada's motion (Mtn. Seq. No. 023) (i) to renew the Court's Prior Decision, (ii) to dismiss the Complaint, and (iii) for sanctions is DENIED; and it is further

ORDERED that Vale Canada's motion (Mtn. Seq. No. 024) to issue a subpoena for the deposition of Mr. Hager is DENIED; and it is further

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**
**Motion No.  023 024 025 026**

Page 23 of 24

23 of 24

ORDERED that Traveler's motion (Mtn. Seq. No. 025) for an extension of time to file discovery motions is GRANTED to the extent described herein; and it is further

ORDERED that the Insurers' motion (Mtn. Seq. No. 026) to compel Vale Canada to produce a Rule 11-f witness for an additional deposition is GRANTED; and it is further

ORDERED that Vale Canada must make the additional 11-F witness available for a three-hour deposition within 30 days from the date that this Order is filed; and if Vale Canada is unable to do so, then Travelers may move for all appropriate relief.

20240909140835ADORROK458FFCCB019D40B182C62FE518CCEF7F

__9/9/2024__
__DATE__

__ANDREW BORROK, J.S.C.__

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**654028/2021   TRAVELERS CASUALTY & SURETY COMPANY vs. VALE LIMITED ET AL**                    **Page 24 of 24**
**Motion No.  023 024 025 026**

24 of 24